D. Maimon Kirschenbaum
Josef Nussbaum
JOSEPH & KIRSCHENBAUM LLP
45 Broadway, Suite 320
New York, NY 10006
(212) 688-5640
(212) 981-9587 (fax)

*Attorneys for Named Plaintiffs, proposed FLSA
Collective Plaintiffs, and proposed Class*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

HENRY LOPEZ, NELSON NACIPUCHA, and ALEJO FLORES, on behalf of themselves and others similarly situated,

               Plaintiffs,

    v.

1988 SAINTS LLC d/b/a NINO'S RISTORANTE, NINO'S RESTAURANT GROUP, LTD d/b/a NINO'S RISTORANTE, and NINO SELIMAJ,

               Defendants.

---------------------------------------------------------x

CASE NO. 1:26-cv-6531

COMPLAINT

FLSA COLLECTIVE ACTION AND RULE 23 CLASS ACTION

DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all others similarly situated, allege as follows:

## JURISDICTION AND VENUE

1. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). This Court has supplemental jurisdiction over the New York state law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

3.      Defendant 1988 Saints LLC d/b/a Nino's Ristorante is a New York limited liability company that owns and operates a restaurant called Nino's located at 405 E 52nd Street in Manhattan.

4.      Defendant Nino's Restaurant Group, Ltd. (together with 1988 Saints LLC, the "Corporate Defendants") is a New York corporation that owned and operated Nino's restaurant at its prior location at 1354 First Avenue in Manhattan.

5.      Defendant Nino Selimaj owns both Corporate Defendants.

6.      Nino's first opened for business on First Avenue in approximately 1991.

7.      In mid-2025, Nino's moved from the First Avenue location to the 52nd Street location.

8.      When Nino's was located on First Avenue, Defendant Nino's Restaurant Group, Ltd. paid employees.

9.      When the restaurant moved, Defendant 1988 Saints LLC began paying employees.

10.     As detailed below, Defendant 1988 Saints LLC is the successor entity of Nino's Restaurant Group, Ltd. as, other than moving locations, Nino's on 52nd Street remains the same restaurant as the previous location on First Avenue.

11.     For example, Nino's retained its name and continued to be owned and managed by the same individual, Nino Selimja.

2

12.     When Nino's moved, it also retained many of the same employees and substantially the same menu. The restaurant has also used the same phone number, web site and social media accounts while at both locations.

13.     If there was any doubt, on May 23, 2025, Nino's posted on Instagram: "We Have MOVED."

14.     On December 30, 2025, Nino's posted on Instagram: "Yes! WE'RE BACK!"

15.     Upon information and belief, at all relevant times the Corporate Defendants' annual gross volume of sales has exceeded $500,000.

16.     At all relevant times, the Corporate Defendants have had employees engaged in interstate commerce and handling, selling, or otherwise working on goods and materials that have been moved in or produced for interstate commerce.

17.     Defendant Selimaj actively manages Nino's and is frequently present at the restaurant overseeing its general affairs.

18.     Defendant Selimaj hires and fires employees at the restaurant, determines their rates and methods of pay, and fixes employees' schedules.

19.     For example, Defendant Selimaj hired all of the Plaintiffs in this case.

20.     Plaintiff Henry Lopez worked for Defendants as a server at Nino's from December 2025 until mid-May 2026.

21.     Plaintiff Nelson Nacipucha worked for Defendants as a server at Nino's from December 2025 through February 2026.

22.     Plaintiff Alejo Flores worked for Defendants as a server at Nino's from approximately December 2025 through June 2026.

## FLSA COLLECTIVE ACTION ALLEGATIONS

3

23.     Plaintiffs bring the First and Second Claims for Relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all servers, bartenders, barbacks, runners, and bussers employed by Defendants at Nino's on or after the date that is three years before the filing of the Original Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

24.     At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan and common policies, programs, practices, procedures, protocols, routines, and rules of willfully retaining their tips and not paying overtime.   The Plaintiffs' claims, stated herein, are essentially the same as those of the other FLSA Collective Plaintiffs.

25.     The First Claim for Relief is properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b).   The FLSA Collective Plaintiffs are readily ascertainable.   For purpose of notice and other purposes related to this action, their names and contact information are readily available from the Defendants.   Notice can be provided to the FLSA Collective Plaintiffs via first class mail, email, and text message to the last address, email address, and phone number known to Defendants.

## **RULE 23 CLASS ALLEGATIONS – NEW YORK**

26.     Plaintiffs bring the Second and Third Claims for Relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all servers, bartenders, barbacks, runners, and bussers employed by Defendants on or after the date that is six years before the filing of the Original Complaint in this case as defined herein (the "Class Period").

27.     All said persons, including Plaintiffs, are referred to herein as the "Class."  The Class members are readily ascertainable.  The number and identity of the Class members are determinable from the records of Defendants.  The hours assigned and worked, the positions held, and the rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under said F.R.C.P. 23.

28.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court.  Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendant, upon information and belief, there are more than fifty (50) members of the Class.

29.     Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions.  All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage and overtime compensation and illegal retention of tips.  Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member.  Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

30.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class.  Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

31.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

32.     Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because

doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

33.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)     Whether Defendants employed Plaintiffs and the Class members within the meaning of the New York law.

b)     Whether Defendants paid Plaintiffs and the Class members for all hours worked, including overtime.

c)     At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiffs and the Class members for their work.

d)     Whether Plaintiffs and the Class Members spent more than two hours and/or 20% of their shifts performing non-tipped work.

e)     Whether Defendants paid Plaintiffs and the Class members the minimum wage for all hours worked.

f)     Whether Defendants retained and or misappropriated Plaintiffs' and the Class Members' tips.

g)     Whether Plaintiffs and the Class members received wage statements that met all the statutory requirements.

## FACTS

34.     Defendants committed the following alleged acts knowingly, intentionally and willfully.

35.    Defendants did not pay Plaintiffs for all the hours they worked, including overtime hours.

36.    Specifically, Plaintiffs typically worked 5 or 6 dinner shifts in a week. Dinner shifts usually lasted from approximately 3:30 p.m. or 4:00 p.m. until between 10 p.m. and 12 a.m.

37.    Thus, plaintiffs typically worked between 36 and 48 hours of dinner shifts in a week.

38.    Plaintiffs also occasionally worked lunch shifts. These shifts typically commenced at 11:00 a.m. and would continue straight through into a dinner shift.

39.    Thus, lunch shifts typically lasted 4.5 or 5 hours.

40.    Even though Plaintiffs consistently worked overtime, Defendants did not pay them any overtime pay.

41.    Even when occasions Plaintiffs worked less than 40 hours in a week, Defendants did pay Plaintiffs for all of their hours worked.

42.    For the hours that Defendants did pay, they paid Plaintiffs and putative Class members pursuant to a tip credit. As a result, Defendants paid Plaintiffs and putative Class members less than the full New York minimum wage.

43.    Defendants were not entitled to use a tip credit to pay Plaintiffs and putative Class members less than the minimum wage, because (a) Defendants did not give Plaintiffs and putative Class members proper written notice of the tip credit, and (b) Defendants regularly required Plaintiffs and putative Class members to spend more than 2 hours per day and/or 20% of their workdays performing non-tipped work.

44.    Defendants never gave Plaintiffs wage notices that satisfied New York's tip credit notice requirement.

8

45.      For example, Defendants never gave Plaintiffs notices that extra pay is required if tips are insufficient to satisfy the minimum wage, and they did not give Plaintiffs any wage notices in 2026, when their pay rates changed.

46.      Specifically, in January 2026, Defendants commenced paying Plaintiffs $11.35 per hour, which was the tip credit minimum wage. The full New York minimum wage at that time was $17 per hour.

47.      Defendants were not entitled to pay Plaintiffs and putative Class members the lower tip credit minimum wage because they never provided written notice that they were paying Plaintiffs an hourly rate of $11.35, as required by New York law.

48.      Defendants were also not entitled to take a tip credit because Plaintiffs and putative Class members typically spent either more than 2 hours and/or more than 20% of their workdays performing non-tipped side-work.

49.      By way of example, Plaintiffs and putative Class members typically worked dinner shifts that lasted from roughly 3:30 p.m. or 4:00 p.m. until between 10 p.m. or 12 p.m. From the time Plaintiffs arrived to work until 5:00 p.m. or 5:30 p.m., Plaintiffs performed side work such as, among other things, cleaning and polishing glasses, cleaning and polishing silverware, cleaning and wiping menus, filling salt and pepper shakers, moving and setting up tables and chairs, carrying and organizing boxes from the deliveries the restaurant received.

50.      When Plaintiffs and putative Class members were scheduled to work lunch shifts, they typically arrived for work at 11 a.m.  Nino's did not open for customers until noon. From 11 a.m. until customers arrived at the restaurant, Plaintiffs performed the same side work duties described above.

51.     At the end of their shifts, Plaintiffs and putative Class members were required to perform roughly 30 to 60 minutes of side work, which involved, among other things, tidying their tables and work areas, charging iPad menus, and carrying linens from the restaurant's basement to them have washed.  On some occasions, Plaintiffs also had to wash dishes and place dishes into dishwashers at the end of their shifts

52.     Thus, Plaintiffs spent more than one and a half hours performing non-tipped work during a six or eight hour shift, *i.e.*, more than 20% of their shift.

53.     Defendants also misappropriated Plaintiffs' and other tipped employees' tips by requiring them to share tips with the restaurant's owner, Defendant Nino Selimaj.

54.     Nino's frequently hosts private events.  However, Defendants did not distribute all of the mandatory and/or voluntary gratuities paid by the customers on these events/buyouts to the food-service employees that worked those events.

55.     Defendants did not pay Plaintiffs New York's spread-of-hours pay for every workday that lasted longer than 10 hours.  Plaintiffs' double shifts (i.e., lunch and dinner shifts in the same day) lasted longer than 10 hours.

56.     Plaintiffs' wage statements did not state the correct hours that they worked.  Had Defendants included all of his work hours on their paystubs, Plaintiffs would have likely been paid for all of the hours they worked. That is, as a result of Defendants not including all of the hours worked on the paystubs, Plaintiffs were underpaid.  If Defendants properly listed all of Plaintiffs' hours worked on their paystubs but not paid them for all of those hours, Plaintiffs would have immediately addressed with Defendants that they were not being paid for all hours worked.

57.     In addition, Plaintiffs' ability to advocate for themselves – both during their employment and now – and show that they were not paid for all of the time that they worked is harmed by Defendants' failure to provide accurate wage statements.

58.     Defendants knew that nonpayment of minimum wage/overtime and improperly forcing and/or the Plaintiffs to share their tips with management would economically injure Plaintiffs and violated federal and state laws.

## FIRST CLAIM FOR RELIEF
### (FLSA Illegal Deductions from Gratuities, 29 U.S.C. § 201, *et seq.*
### Brought by Plaintiffs on Behalf of Themselves
### and the FLSA Collective Plaintiffs)

59.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

60.     At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.

61.     At all relevant times, Defendants have employed, "employee[s]," including Plaintiffs and each of the FLSA Collective Plaintiffs.

62.     During the statute of limitations period covered by these claims, Defendants knowingly retained/misappropriated gratuities belonging to Plaintiffs and the FLSA Collective Plaintiffs.

63.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seek damages in the amount of their respective unpaid gratuities, liquidated damages as provided by the FLSA, attorneys' fees and costs, post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
**(FLSA Overtime Violations, 29 U.S.C. § 201, *et seq.***
**Brought by Plaintiffs on Behalf of Themselves**
**and the FLSA Collective Plaintiffs)**

64.     Plaintiffs reallege and incorporate by reference all previous paragraphs.

65.     Throughout the statute of limitations period covered by these claims, Plaintiffs and the other FLSA Collective Plaintiffs worked in excess of forty (40) hours per workweek.

66.     At all relevant times, Defendants operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay the FLSA Collective Plaintiffs the appropriate overtime rate for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA even though the FLSA Collective Plaintiffs have been and are entitled to overtime.

67.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seek damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, and post-judgment interest.

## THIRD CLAIM FOR RELIEF
**(New York State Minimum Wage Violations, N.Y. Lab. L. §§ 650 *et seq.*)**
**(Brought by Plaintiffs on Behalf of Themselves and the Class)**

68.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

69.     Defendants knowingly paid Plaintiffs and the Class members less than the New York State minimum wage for all hours worked.

70.     As a result of Defendants' unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

12

**FOURTH CLAIM FOR RELIEF**
**(New York Overtime Violations,**
**N.Y. Lab. L. § 650 *et seq.*, N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4**
**Brought by Plaintiffs on Behalf of Themselves and the Class)**

71.    Plaintiffs, on behalf of themselves and the Class members, reallege and incorporate by reference all previous paragraphs.

72.    It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying proper overtime wages for all hours worked in excess of forty (40) hours in any workweek.

73.    Throughout the Class Period, Defendants willfully, regularly and repeatedly failed to pay Plaintiffs and the Class members at the required overtime rate for hours worked in excess of forty (40) hours per workweek.

74.    As a result of Defendants' willful and unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

**FIFTH CLAIM FOR RELIEF**
**(Illegal Deductions from Gratuities, N.Y. Lab. L. § 196-d)**
**(Brought By Plaintiffs on Behalf of Themselves and the Class)**

75.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

76.    Defendants retained/misappropriated portions of Plaintiffs' and Class Members' tips.

77.    As a result of Defendants' unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

13

**SIXTH CLAIM FOR RELIEF**
**(New York Wage Statement Requirements,**
**N.Y. Lab. L. §§ 195, 198**
**Brought by Plaintiffs on Behalf of Themselves and the Class)**

78.    Plaintiffs, on behalf of themselves and the Class members, reallege and incorporate by reference all previous paragraphs.

79.    Defendants did not provide Plaintiffs and the members of the Class with wage statements that contained the required information under N.Y. Lab. Law § 195.

80.    As a result of Defendants' unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages, including penalties pursuant to N.Y. Lab. Law § 198 and costs and attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of Themselves and the FLSA Collective Plaintiffs and members of the Class, prays for relief as follows:

A.    Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.    Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

C.    Designation of this action as a class action pursuant to F.R.C.P. 23.

D.    Designation of Plaintiffs as Representatives of the Class.

E.    An award of damages, according to proof, including liquidated damages, to be paid by Defendants;

14

F.      Penalties available under applicable laws;

G.      Costs of action incurred herein, including expert fees;

H.      Attorneys' fees, including fees pursuant to 29 U.S.C. § 216,  N.Y. Lab. L. §§ 198, 663, and other applicable statutes;

I.      Pre-judgment and post-judgment interest, as provided by law; and

J.      Such other and further legal and equitable relief as this Court deems necessary, just and proper.

Dated: New York, New York          Respectfully submitted,
      July 30, 2026
                                 JOSEPH & KIRSCHENBAUM LLP


                                 By: /s/ *D. Maimon Kirschenbaum*
                                      D. Maimon Kirschenbaum
                                      Josef Nussbaum
                                      45 Broadway, Suite 320
                                      New York, NY 10006
                                      Tel: (212) 688-5640
                                      Fax: (212) 981-9587

                                 *Attorneys for Named Plaintiffs, proposed*
                                 *FLSA Collective Plaintiffs, and proposed*
                                 *Class*

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial.